**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **SIMONNE T. TASSONE,** | : | |
| **Plaintiff,** | : | |
| **v.** | : | **C.A. No. 03-481 ML** |
| **PROVIDENCE SCHOOL BOARD and THE CITY OF PROVIDENCE, by and through its Finance Director, Alex Prignano,** | : | |
| **Defendants.** | : | |

**PLAINTIFF'S OBJECTION TO DEFENDANT'S MOTION TO COMPLETE DISCOVERY OF PLAINTIFF BY DECEMBER 31, 2005**

Now comes the Plaintiff, Simonne T. Tassone, in the above-captioned matter, and hereby objects to the Motion to Complete Discovery of the Plaintiff by December 31, 2005 filed by Defendants, City of Providence.

In support thereof, Plaintiff relies on the attached Memorandum.

Plaintiff, Simonne T. Tassone,
By her Attorneys,

Patricia E. Andrews, #4321
Carly Beauvais Iafrate, #6343
170 Westminster Street, Suite 601
Providence, RI 02903
(401) 421-0966
(401) 351-4802 (fax)

**CERTIFICATION**

I hereby certify that a copy of the within document has been sent by first-class mail on the 1st day of November 2005, to:

Sara Rapport, Esq.
City of Providence
Department of Law
275 Westminster St., Suite 200
Providence, RI 02903

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

**SIMONNE T. TASSONE,**

**Plaintiff,**

**v.** **C.A. No. 03-481 ML**

**PROVIDENCE SCHOOL BOARD and THE CITY OF PROVIDENCE, by and through its Finance Director, Alex Prignano,**

**Defendants.**

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF OBJECTION TO DEFENDANT'S MOTION TO COMPLETE DISCOVERY OF PLAINTIFF BY DECEMBER 31, 2005**

Despite the fact that the City has had nearly two years within which to conduct discovery in this case, it is again seeking additional time. Because granting this request would be unfair, unnecessary and violative of the discovery rules, the City's motion should be denied.

**I. Relevant Travel.**

This employment disability-discrimination case was served upon the City in February 2004. For the next year and a half, the City did absolutely nothing in the way of discovery, with the exception of conducting the deposition of the Plaintiff in December 2004. By June 2005, the City was facing yet another discovery closure date.[1] As of that time, the City had not propounded a single interrogatory or document request to Plaintiff. Accordingly, the City sought another extension of the discovery period to September 1, 2005, so that it could "finish"

[1]Prior to July 2005, the parties had jointly moved for two extensions of the discovery period. The original closure date was October 1, 2004. The Court then granted an additional six months to April 1, 2005. The Court then granted an additional three months to July 1, 2005.

Plaintiff's deposition. That request was granted by the Court.[2] Therefore, as of July 2005, defense counsel knew that the dispositive motion filing deadline was September 15. Despite this, the City still did not issue any written discovery and noticed Plaintiff's deposition for July 25. However, because Plaintiff had a critical medical appointment, Defendant agreed to postpone the deposition.

Significantly, even though the parties had been working together to schedule depositions, the City did not contact Plaintiff's counsel for Plaintiff's availability in the remainder of July or August. <u>Instead, the City unilaterally chose to notice Plaintiff's deposition for the last day before the "new" discovery closure date, August 31, 2005.</u> Even though defense counsel had thirty-seven days until the closure date, she selected the last possible day, August 31. On August 9, 2005, the City finally issued a set of written discovery to Plaintiff. Because this discovery was not issued until August 9, the City would not have even received responses until approximately three days before its summary judgment motion was required to be filed.

Plaintiff's counsel made Plaintiff available for deposition on August 31. The August 31 deposition convened at 10:10 a.m. Plaintiff did not leave the building for lunch. Moreover, Plaintiff and her counsel made it clear that both were willing to stay until Defendant was finished. Specifically, the following colloquy took place.

MS. ANDREWS: For the record, she is prepared to go beyond 4:30, and so am I.

THE WITNESS: Any time you want me to go to.

---

[2]Plaintiff was in the process of preparing an objection, but the Court entered an order.

Despite this, toward the end of the deposition, defense counsel stated the following:

MS. RAPPORT: All right. We are going to break for today. * * *

MS. ANDREWS: Let's put on the record that you're, obviously, beyond your seven hours.

Critically, defense counsel made the decision to conclude the deposition even though Plaintiff said that she would be willing to stay until "any time." See Exhibit A. At the close of the deposition on August 31, Plaintiff had been deposed by Defendant for just about ***nine hours and ten minutes, on two separate days***.

Again, although Defendant was "up against the clock," she did not re-notice Plaintiff's deposition until nearly one month later. Plaintiff's counsel had commitments in federal court on the two days chosen by Defendant and informed Defense counsel. Rather than pick another date in September, Defendant selected dates of October 13 and beyond. Unfortunately, Plaintiff seriously injured herself at work on September 20. On Friday, October 7, 2005, Plaintiff had major surgery. Given this, she could not attend the October 13 deposition. Since her surgery, Plaintiff must remain out of work for at least fourteen weeks. She is homebound with the exception of physicians visits and is on strong medication which impairs her memory, among other things.[3]

The City now seeks yet another extension of the discovery period, until December 31. It also requests that it have eight additional weeks, or up to and including February 1, within which to file its dispositive motion. For the following reasons, this request should be denied.

---

[3]If the Court requires, Plaintiff will make available any necessary supporting documentation for her injury and present condition.

**II. Argument.**

The City has argued that it needs eight additional weeks of discovery (on top of the 20 months it has had to date) to "complete discovery" which includes "finishing" Plaintiff's deposition, and receiving responses to its interrogatories and document request. This request is totally unwarranted and unreasonable.

First, as of October 31, 2005, Plaintiff has provided Defendant with the documents in response to Defendant's Request for Production of Documents. Thus, Defendants do not need additional time to secure this response.

Second, Defendant is not entitled to any additional time within which to "finish" the Plaintiff's deposition. Plaintiff has already been deposed for approximately nine hours and ten minutes on two separate days. Pursuant to Rule 30(d)(2), "[u]nless otherwise authorized by the court or stipulated by the parties, a deposition is limited to one day of seven hours." At this point, any further deposition of Plaintiff would be "unreasonably cumulative or duplicative," and the City has had "ample opportunity by discovery in the action to obtain the information sought." Fed. R. Civ. P. 26(b)(2). During the August 31 deposition, the Plaintiff stated that she was perfectly willing to stay until Defendant finished the deposition. The City chose not to do that. The Plaintiff should not be forced to submit to a third day of deposition - - especially given her condition. Under these circumstances, repeatedly extending the discovery period to allow an unnecessary third deposition would amount to an abuse of the discovery process. Thus, the City does not need an additional eight weeks "finish" Plaintiff's deposition.

The City has also said that it needs the eight-week extension to secure Plaintiff's Answers to Interrogatories. Plaintiff's counsel had originally stated that Answers would be produced before Plaintiff's deposition. Defendant never indicated that this was a problem. This

was well before Plaintiff's unanticipated accident. Significantly, Plaintiff's counsel has already informed Defendant that it had all the information from Plaintiff but could not have her sign the interrogatories because of her condition. Defendant's remedy, however, is not an eight-week discovery extension, but rather, a motion to compel. Defendant is free to file this motion at any time and has not done so.

Finally, the City has requested that if it is allowed until December 31 to complete its discovery, then it needs ***an additional <u>two months or eight weeks</u> (up to February 1)*** within which to file a dispositive motion. There is not a single reason why this length of time is necessary. In fact, the Defendant has previously asked for only two weeks, which was granted by the Court.[4] Two weeks is a standard and reasonable time. There is no reason why the City now should be afforded four times that amount of time, only because it has dragged its feet in discovery.

**III. Conclusion.**

The City should not be allowed to needlessly drag out or delay the resolution of this lawsuit. At some point, the discovery period must close. That time is now. Accordingly, the Plaintiff respectfully requests that the City's motion be denied.

---

[4]It is difficult to understand how Defense counsel can request the permission to file a dispositive motion in good faith in light of the fact that the City did not even issue its written discovery until August 2005. For example, without having Answers to Interrogatories, how can the City even know the basis for such a motion and/or that it has record support. Again, the City originally sent out this discovery on August 9, with a closure date of September 1. Thus, the City would not have even received the responses before the closure date and would have only received them approximately three days before the day its summary judgment motion was due.

Plaintiff, Simonne T. Tassone,
By her Attorneys,

Patricia E. Andrews, #4321
Carly Beauvais Iafrate, #6343
170 Westminster Street, Suite 601
Providence, RI 02903
(401) 421-0966
(401) 351-4802 (fax)

**CERTIFICATION**

I hereby certify that a copy of the within document has been sent by first-class mail on the 1st day of November 2005, to:

Sara Rapport, Esq.
City of Providence
Department of Law
275 Westminster St., Suite 200
Providence, RI 02903

**EXHIBIT A**

Page 186

time?
A. Yes, because they had to.
Q. And they would talk about the students with you?
A. Yes.
Q. But they would not be friendly to you?
A. Right, but then the following year, everything changed.
Q. Are we still talking about the same cohort, the special --
A. Yes, the special ed teachers.
Q. Year 3, 1995/1996, is it still Wilma, Elaine, the man and you, or was there a point at which the man went down and a new person came in?
A. I think that's the point the new person came in, and the new person talked to me.
Q. Who was the new person?
A. I can't think of her name, but I do believe she teaches in Providence. Turchetta, I think, is her last name.
Q. So the third year, Elaine left or went downstairs?
A. Right.
Q. And we are talking about 1995/1996?
A. And Murray retired.
Q. Murray is the man?
A. Murray is the man. I remembered his name, Murray.

Page 187

Q. And Murray retired by that third year?
A. Yes.
Q. And who replaced Murray?
A. I think, but I am not sure, because we had several teachers come and go, we had a Jennifer, and I can't remember her last name, and we had a Sloan White, and we had somebody by the name of Sam Pho.
Q. It would have been the one in charge of math; does that help refresh your memory?
A. Sloan White had math. Jennifer, it begins with a Q, her last name, but I can't remember her last name, so I am trying to remember the year that these three came. I am having a hard time remembering, but I remember them being part of the team. As a new teacher came on to the team, they would be okay with me.
Q. So the new folks coming in replacing Elaine or the man were friendlier?
A. Yes.
Q. And Wilma remained part of this cohort?
A. Right.
Q. And in the first two years, we are talking 1993/1994, 1994/1995, did any one of these teachers, other than Wilma Johnson, reporting to you say to you directly, I am angry that you came here and ousted this other teacher?

Page 188

MS. ANDREWS: Objection as to form.
A. I know, but I can't remember who, telling me that they were angry because I ousted this other teacher, because she was a very nice teacher, and she had been teaching there for many years, but I don't know if it was Elaine or Fran.
Q. Did any of these teachers, other than saying that, say anything else to you that was hurtful or inappropriate?
MS. ANDREWS: During that period 1993 through 1996?
MS. RAPPORT: Yes.
A. It was hurtful and made me feel bad is that they would not -- they just totally ignored me, avoided me, like I was the plague. I felt awful. All I remember is feeling awful and not knowing what to do about it, but something happened, and they changed.
Q. What happened?
A. My daughter was killed in a car accident.
Q. What year was that?
A. 1996/1997 school year.
Q. That would have been your fourth year at school?
A. Yes, and for some reason all three of them, to my immense surprise, changed and came to my assistance.
Q. All three?
A. Elaine Starks, Fran Gonella, and Jack Biancusso,

Page 189

and they just changed completely, they came to me and offered their condolences, and they became very helpful, because I went back to work a couple of weeks after she died, and they said to me, if you cannot teach, put your kids in our class, we will give you all the time. They were just like night and day after she died.
Q. When did your daughter get killed?
A. June 2, 1997.
Q. And what else did they do for you, other than that?
A. They helped, they started a fund, especially Jack, to collect monies to help for my daughter's funeral.
Q. How much did that raise?
A. That raised close to $2,000. About 1,700.
Q. Anything else?
A. They started giving me books and supplies and just being very friendly. It was like, you know, it was like a night-and-day change. It felt so good. I was so happy. But too bad it had to take my daughter's death for them to be nice to me.
(BRIEF RECESS TAKEN)
MS. ANDREWS: For the record, she is prepared to go on beyond 4:30, and so am I.
THE WITNESS: Any time you want me to go to.

complaining, so I said, it's not worth it. I will
think of something else.
MS. RAPPORT: All right. We are going to
break for today.
THE REPORTER: For the record, does
counsel want a transcript of the proceedings?
MS. ANDREWS: Mini.
MS. RAPPORT: Original and mini.
MS. ANDREWS: Let's put on the record
that you're, obviously, beyond your seven hours. Why
don't we talk and try to accommodate you. Can you try
to give me the amount of time that you have left and
then we can talk about it?
MS. RAPPORT: Well, I am not going to
agree I am beyond the seven hours, but I will certainly
agree to talk about reconvening.
(DEPOSITION ADJOURNED AT 4:30 P.M.)