**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **SIMONE T. TASSONE,** | : | |
| **Plaintiff,** | : | |
| v. | : | **C. A. No. 03-481ML** |
| **PROVIDENCE SCHOOL BOARD,** | : | |
| **Defendant.** | : | |

## DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTION

Defendants in the above-referenced case hereby respond to the objection filed by the Plaintiff on 1 November 2005, and received in the Law Department on 2 November 2005.

Counsel for Plaintiff misstates the chronology and mischaracterizes the Defendants' persistent efforts to gain discovery of Plaintiff's claims. Counsel for Defendants hereby avers as follows:

(1) Defendants sought to depose Plaintiff on 16 September 2004 and 1 October 2004; at the request of Plaintiff and/or counsel for Plaintiff, the Defendants agreed to reschedule such deposition.

(2) Plaintiff was deposed on 2 December 2004. The deposition commenced at 10:23 a.m. and ended at 2:30 p.m. because the Plaintiff wanted to stop. In addition, the parties had a break of approximately one and one-quarter to one and one-half hours. Thus, conservatively estimated, the Plaintiff was deposed on December 2 for under three hours.

(3) Thereafter, Defendants scheduled the continued deposition of the Plaintiff on or

about 18 March 2005. The deposition did not take place, however. Defendants' counsel learned the morning of the deposition itself, and only after the stenographer was present in the Law Department, prepared and setting up for such deposition, that Plaintiff could not attend, allegedly to attend to a medical need. Plaintiff's counsel had called late in the day before and left a telephonic message that the deposition was "off." (Exhibit 1 attached hereto).

(4) Thereafter, Defendants sought to depose the Plaintiff on Defendants on 25 July 2005. Again, counsel for Plaintiff cancelled such deposition, this time a few days before the July 25th date. (Exhibit 1 attached hereto).

(5) The Plaintiff's deposition continued on 31 August 2005 by joint agreement of Ms. Carly Iafrate, Attorney Andrews' associate, and undersigned counsel. The date was not "unilaterally" chosen by counsel for the Defendants, but selected in part to accommodate dates for numerous witnesses whom Plaintiff sought to depose prior to 1 September, and in part to accommodate what Ms. Iafrate represented to be Attorney Andrews' vacation schedule in August. (Exhibit 2 attached hereto).

(6) The August 31 deposition commenced at 10:00 a.m., and ended at 4:30 p.m., with approximately one hour for lunch, for a total deposition time that day of 5.5 hours.

(7) During the August 31 questioning, the Plaintiff spent a good amount of time reviewing her prior testimony, supposedly to "correct it." She also tended to digress and at times was non-responsive. When counsel for Defendants attempted to control the questioning and press Plaintiff to be more responsive, counsel for Plaintiff reprimanded counsel for Defendants, accusing her of "interrupting" the Plaintiff and demanding that she permit Plaintiff to answer in a discursive style without regard to time. Attached are exchanges from the deposition concerning

this problem (Exhibit 3 at 73-85, 126-27); in the last exchange, even counsel for Plaintiff said: "There is no question pending. You are just rambling right now, that I am going to say, so I am going interrupt you right now because I want you to conserve your energy. (Exhibit 2 at 175).

(8) Counsel for Defendants needed to suspend on August 31 at 4:30 p.m. to attend a 5:00 p.m. appointment with the Assistant Rabbi and Cantor of Temple Beth El in Providence, to discuss the Bar Mitzvah of her son. Counsel for the Plaintiff was aware of that constraint, in general terms, but failed to disclose such awareness in her Objection and failed to include that portion of the deposition transcript in her court filing, in which Defendants' counsel explained such constraint. (Exhibit 3 at 189-90). Plaintiff was tired by 4:30 p.m. in any event, something about which Attorney Andrews is usually solicitous.

(9) As of August 31, the Plaintiff had been deposed for 8.5 hours on two separate days. She had cancelled scheduled depositions twice, and sought continuances and new dates on at least two other occasions. Defendants had numerous additional areas to cover in questioning Plaintiff as of 31 August 2005.

(10) Counsel for Defendants twice attempted to conclude Plaintiff's deposition prior to Plaintiff's accident in October 2005.

(11) First, counsel for Defendants issued a Notice for Deposition for September 21 and 22, 2005 via mail on 23 August 2005. Sometime before those dates, counsel for Plaintiff advised of a commitment on both dates in federal court that rendered her unable to appear on either date. (Exhibit 4 attached hereto).

(12) Second, counsel for Defendants issued a Notice for Deposition for 14 October and 18 October 2005 but Plaintiff had an injury at work in early October 2005 that has rendered

her unavailable to the present. (Exhibit 5 attached hereto).

(13) In addition, to date, Plaintiff has not served the responses to interrogatories served on her on 9 August 2005, and only partially responded to the request for production of documents also served on 9 August 2005. (Exhibit 6 attached hereto).

(14) In contrast, Defendants have cooperated fully in producing discovery, to wit:

a. On or about 21 May 2004, Defendants provided to Plaintiff disclosures and discovery pursuant to Federal Rule of Civil Procedure 26;

b. On 9 September 2004, Defendants served their Responses and Answers to eighteen (18) document requests and twenty-one (21) interrogatories;

c. In response to Motions by Plaintiff alleging that Defendants' answers and responses were insufficiently responsive, Defendants provided Further Answers to Plaintiff's Interrogatories (on 6 October 2004), Third Answers to Plaintiff's Interrogatories (on 22 November 2004), and a Third Response to Plaintiff's Request for Production of Documents (on 22 November 2004).

d. On 29 December 2004, the Plaintiff filed a Motion for Conditional Order of Default and Attorneys' Fees. On 14 January 2005, Magistrate Judge David Martin denied such Motion, but allowed a limited supplemental response by Defendants to Plaintiff.

e. On 9 February 2005, Defendants provided that Supplemental Response.

f. On 16 February 2005, Plaintiff served on Defendants a Second Request for Documents and a Second Set of Interrogatories. There were nine (9) document requests and one interrogatory which eight (8) substantive subparts,

asking three (3) separate questions about each of 8 individuals other than the Plaintiff associated with or employed by the School Department.

g. On 4 March 2004, Defendants responded to the Second Request for Production of Documents and provided Answers to the Second Set of Interrogatories.

h. Via facsimile on 20 May 2005, Plaintiff then issued a Third Request for Production of Documents comprised of seventy-nine (79) individual requests, some with subparts.

i. Defendants objected to this Request in its entirety; the Court denied the Plaintiff's Motion to Compel responses to this Third Request, except for seven requests which counsel for Defendants volunteered to produce, and did so in September 2005.

(15) Defendants also have produced the following witnesses for deposition for the following periods of time on the following dates:

a. Mr. Robert Lee: November 22, 2004 (12:17 p.m. to 2:55 p.m.) and October 21, 2005 (11:20 p.m. to 3:35 p.m.)

b. Mr. Robert Cochran: December 16, 2004 (11:00 a.m. to 3:15 p.m.)

c. Mr. James Winn: March 8, 2005 (11:10 a.m. to 2:30 p.m.)

d. Mr. Robert DiRuzzo: July 19, 2005 (11:00 a.m. to 3:15 p.m.) and October 27, 2005 (9:10 a.m. to 11:25 a.m.).

e. Mr. Donald Zimmerman: July 21, 2005 (11:00 a.m. to 4:58 p.m.) and continued deposition scheduled for November 16, 2005 at 11:00 a.m.

f. Dr. Jose Gonzalez: August 2, 2005 (11:12 a.m. to 3:16 p.m.) and October 31, 2005 (11:00 a.m. to 2:30 p.m.)

g. Ms. Jane Shagrue: August 17, 2005 (11:00 a.m. to 4:24 p.m.)

h. Ms. Glenda Guglielmo: October 7, 2005 (11:00 a.m. to 3:15 p.m.).

(16) The purpose in seeking until 31 December 2005 for continued deposition of Plaintiff was to afford the Plaintiff time to recover, review, sign and produce the Answers to Interrogatories, outstanding since early August 2005, and thereby render the conclusion of her deposition more efficient.

(17) If Plaintiff is able to be deposed prior to 31 December 2005, Defendants have no objection to concluding discovery prior to this date; given the uncertainty of her medical condition and recovery time, however, counsel for the Defendants sought to be conservative.

(18) Defendants need a full explication by Plaintiff of her case to clarify those issues that are ripe for resolution. They therefore reassert their request for sufficient time prior to the filing of dispositive motions to: (a) Review Plaintiff's Answers to Interrogatories; and Responses to Request for Production for Documents; and (b) Conclude the Deposition of the Plaintiff. Several claims and topics remain completely unexplored.

(19) The refusal of counsel for the Plaintiff to accede to this basic request, in light of her client's conduct, both in failing to appear on scheduled deposition dates, and failing to answer questions directly in deposition, is unreasonable. Counsel for Plaintiff, in fact, already agreed to produce Plaintiff for one more day. (Exhibit 4 attached hereto – e-mail dated Thursday 22 September 2005).

(20) Although Plaintiff's most recent mishap is indeed unfortunate, it should not

prevent Defendants from gaining information about a lawsuit that Plaintiff herself has initiated, particularly when Plaintiff's claims span such a lengthy period of time (1993 to present) and require reconstruction of events that took place more than one decade ago.

DEFENDANTS,
PROVIDENCE SCHOOL BOARD AND CITY OF PROVIDENCE

By their Attorney,

JOSEPH M. FERNANDEZ
CITY SOLICITOR

Sara A. Rapport (No. 6614)
Senior Assistant City Solicitor
City of Providence Law Department
275 Westminster Street, Suite 200
Providence, RI 02903
((401) 421-7740 Ext. 333
Fax (401) 351-7596

**CERTIFICATION**

I hereby certify that on this 4th day of November, I caused to be mailed a copy of the foregoing Response to Plaintiff's Objection with exhibits, via first-class mail, on opposing counsel: Patricia E. Andrews, Esq., 170 Westminster Street, Suite 601, Providence, RI 02903

# EXHIBIT 1

JOSEPH M. FERNANDEZ
City Solicitor

DAVID N. CICILLINE
Mayor

## Department of Law

2 March 2005

Carly Beauvais Iafrate
Law Office of Patricia E. Andrews
170 Westminster St., Suite 601
Providence, Rhode Island 02903

Re: Simonne Tassone

Dear Carly:

I will be handling the case henceforth. Here is the deposition schedule for the remainder of the month.

| | | | |
|---|---|---|---|
| Mr. Winn: | March 8 | 11 a.m. | Andrews Law Office |
| Mr. Gonzalez: | March 9 | 1:30 p.m. | Andrews Law Office |
| Ms. Tassone | March 18 | 10 a.m. | Law Department |

You are checking to confirm that the Gonzalez deposition can go forward on the afternoon of 9 March.

You are also checking to identify which of the following dates Ms. Andrews prefers to depose Mr. DiRuzzo: March 16, March 17, March 21-23.

I would appreciate hearing back from you on the DiRuzzo deposition at your earliest convenience, and no later than the close of business this week.

I expect that you will also serve Mr. DiRuzzo to insure his attendance on whatever date is preferred. I have not confirmed his schedule or availability on any of the above dates.

Thank you in advance for your cooperation on this matter.

Sincerely yours,

Sara A. Rapport
Senior Assistant City Solicitor

275 Westminster Street, Suite 200 • Providence, Rhode Island 02903-1845
(401) 421-7740 (Voice) • (401) 751-0203 (TDD) • (401) 351-7596 (Facsimile)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| **SIMONNE T. TASSONE, Plaintiff** | : | |
| | : | |
| **VS.** | : | **C.A. NO. 03-481ML** |
| | : | |
| **PROVIDENCE SCHOOL COMMITTEE AND THE CITY OF PROVIDENCE, by and through its Finance Director, Alex Prignano, Defendants** | : | |

## NOTICE TO TAKE DEPOSITION

DEPONENT: Simonne T. Tassone

DATE & TIME OF TAKING: **Monday, July 25, 2005 at 10:00 a.m.**

To: Patricia E. Andrews, Esq.
Carly Beauvais Iafrate, Esq.
170 Westminster Street
Providence, RI 02903

Allied Court Reporters
115 Phenix Avenue
Cranston, RI 02920

Please take notice that, pursuant to the provisions of the Federal Rules of Civil Procedure, Defendants will take testimony on oral examination of the above-named deponent, at the date and time herein above referred to, before a Notary Public of the State of Rhode Island or some other duly qualified person and thereafter from day to day as the taking of the deposition may be adjourned, at the office of the **Department of Law, City of Providence, 275 Westminster Street, Suite 200, Providence, Rhode Island.**

You are invited to attend to cross-examine.

DEFENDANTS,
PROVIDENCE SCHOOL BOARD &
CITY OF PROVIDENCE

By its Attorneys:

JOSEPH M. FERNANDEZ
CITY SOLICITOR

SARA A. RAPPORT (#5251)
Senior Assistant City Solicitor
Department of Law
275 Westminster Street, Suite 200
Providence, RI 02903
(401) 421-7740 Ext. 333
(401) 351-7596 (Fax)

**CERTIFICATION**

I hereby certify that on this 11th day of ~~June~~ July, 2005, I caused a true copy of the foregoing to be served on the above-listed parties by ☑ mailing a copy of same, ☐ faxing a copy of same, ☐ hand-delivering a copy of same.

JOSEPH M. FERNANDEZ
City Solicitor

DAVID N. CICILLINE
Mayor

## Department of Law

21 July 2005

Patricia Andrews, Esq.
Carly Beauvais Iafrate, Esq.
Law Offices of Patricia E. Andrews
170 Westminster St., Suite 601
Providence, Rhode Island 02903
*Via Facsimile (351-4802) and First-Class Mail*

Re: Simonne Tassone

Dear Pat and Carly:

I was advised by e-mail on Monday 18 July 2005 that Ms. Tassone would not be available on the date scheduled for continuation of her deposition, Monday, 25 July 2005. I have therefore cancelled that date. I am now enclosing a new notice for such deposition in the Law Department on Wednesday, 31 August 2005. If we do not finish on the 31st, I will expect that we can agree to do so after the discovery deadline of 1 September 2005.

Thank you for your attention to this matter.

Sincerely yours,

Sara A. Rapport
Senior Assistant City Solicitor
Chief Legal Counsel, PSD

Enclosure

275 Westminster Street, Suite 200 • Providence, Rhode Island 02903-1845
(401) 421-7740 (Voice) • (401) 751-0203 (TDD) • (401) 351-7596 (Facsimile)

# EXHIBIT 2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| **SIMONNE T. TASSONE, Plaintiff** | : | |
| | : | |
| **VS.** | : | **C.A. NO. 03-481ML** |
| | : | |
| **PROVIDENCE SCHOOL COMMITTEE** | : | |
| **AND THE CITY OF PROVIDENCE,** | : | |
| **by and through its Finance Director,** | : | |
| **Alex Prignano, Defendants** | : | |

# NOTICE TO TAKE DEPOSITION

DEPONENT: Simonne T. Tassone

DATE & TIME OF TAKING: **Wednesday, August 31, 2005 at 10:00 a.m.**

To: Patricia E. Andrews, Esq.
Carly Beauvais Iafrate, Esq.
170 Westminster Street
Providence, RI 02903

Allied Court Reporters
115 Phenix Avenue
Cranston, RI 02920

Please take notice that, pursuant to the provisions of the Federal Rules of Civil Procedure, Defendants will take testimony on oral examination of the above-named deponent, at the date and time herein above referred to, before a Notary Public of the State of Rhode Island or some other duly qualified person and thereafter from day to day as the taking of the deposition may be adjourned, at the office of the **Department of Law, City of Providence, 275 Westminster Street, Suite 200, Providence, Rhode Island.**

You are invited to attend to cross-examine.

DEFENDANTS,
PROVIDENCE SCHOOL BOARD &
CITY OF PROVIDENCE

By its Attorneys:

JOSEPH M. FERNANDEZ
CITY SOLICITOR

SARA A. RAPPORT (#5251)
Senior Assistant City Solicitor
Department of Law
275 Westminster Street, Suite 200
Providence, RI 02903
(401) 421-7740 Ext. 333
(401) 351-7596 (Fax)

**CERTIFICATION**

I hereby certify that on this 21st day of July, 2005, I caused a true copy of the foregoing to be served on the above-listed parties by ☑ mailing a copy of same, ☐ faxing a copy of same, ☐ hand-delivering a copy of same.

# EXHIBIT 3

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

SIMONNE T. TASSONE, :
Plaintiff :
VS. : C.A. NO. 03-481ML
:
PROVIDENCE SCHOOL BOARD :
AND THE CITY OF PROVIDENCE, :
Defendants :

DEPOSITION of SIMONNE T. TASSONE, a Plaintiff in the above-entitled cause, taken on behalf of the Defendants, before Lori L. Spremulli, Notary Public, R.P.R., in and for the State of Rhode Island, at the Department of Law, City of Providence, 275 Westminster Street, Providence, Rhode Island 02903, scheduled on Wednesday, August 31, 2005, at 10:00 A.M.

PRESENT:

FOR THE PLAINTIFF,
LAW OFFICE OF PATRICIA E. ANDREWS
BY: PATRICIA E. ANDREWS, ESQ.

FOR THE DEFENDANTS,
DEPARTMENT OF LAW,
CITY OF PROVIDENCE
BY: SARA A. RAPPORT,
SENIOR ASSISTANT CITY SOLICITOR
- and -
PAMELA QUIGLEY,
ASSISTANT CITY SOLICITOR

ALLIED COURT REPORTERS, INC.
115 PHENIX AVENUE
CRANSTON, RI 02920

go through the classroom to get out because the fire alarm went off when I was in the bathroom.
Q. When you got back to your classroom, were the kids gone?
A. Yes, my assistant had gone out with them, and he was angry with me for not having left the building because I was in the bathroom.
Q. What did he say to you?
A. He said to me, you should have been out of the building a long time ago, and I botched up the time because they have to do the time thing, how long it takes everybody to get out of the building, and that I botched it up.
Q. What did you say?
A. I said, I couldn't help it. The alarm went off when I was in the bathroom, and then I said, then I can't get out. And then he said to me, he pointed to -- he said, well, the door, the fire door near Gloria's door is broken so you can get out that way.
Q. What did you say?
A. I just left and went that way and scootered out, but I was upset.
Q. What year was this?
A. That was around 1996, 1995/1996 school year.
Q. Name the fourth time?



A. That time, I am not sure, I know where it was, where he spoke to me, it was outside of my classroom door, but I am not sure exactly sure what year it was.
Q. Was it while Mr. Lee was still principal?
A. Yes.
Q. Was it after Ms. Karbonic?
A. It was after 1996, I believe it was like, I mean after the 1995/1996 school year, I believe it was the 1996/1997 school year.
Q. What happened in that exchange?
A. The same thing, just telling me that, you know, that I was taking too long. I am not sure if my teacher assistant said something to him or another teacher, but I remember him telling me he got a complaint.
Q. Who was your teacher assistant at that time?
A. It might have been Mrs. Brown, because I had like a lot of different assistants, and sometimes I didn't have one.
Q. This is the TA for the kids?
A. Yes.
Q. This is before you got a personal assistant?
A. Yes.
Q. And what did he say to you in this exchange, other than what you have described?



A. How many times does he have to tell me that I am not to do this.
Q. Did he say he got a complaint?
A. Yes.
Q. Do you believe it was another teacher or the TA?
A. I am not sure.
Q. When you would leave to go to the bathroom, did you arrange coverage for your kids?
A. I tried to because Jane Jackson, the art teacher, her classroom was next door to me, and when she would be there, we would open the door between the two classrooms.
Q. And you would give her an alert that you were using the bathroom?
A. Yes, after this incident --
Q. Let me interrupt you for one minute, what if she were not there?
THE WITNESS: And I had to go?
MS. RAPPORT: Right.
A. Sometimes I had to go. I just couldn't chance it, and I think that was the particular time he was talking about, because I remember going to talk to Mr. Lee and telling Mr. Lee about Jane not being there and how Mr. DiRuzzo was very upset with me and yelled at me over it, and he told me to go talk to the teachers down the



hall at that team there and let them know, but you know, they're men, and I am a woman, what I am going to do, every time I've got to go to the bathroom, go tell a man that I was going to the bathroom, and because I can't walk in and whisper it to them because I can't get by the desk with my crutches, it was embarrassing --
Q. Let me --
MS. ANDREWS: Please do not interrupt her. I think that is unfair. That's what happened the last time. That's why she has a --
MS. RAPPORT: I think I have been fair.
MS. ANDREWS: You just interrupted her three seconds ago. It is on the record.
MS. RAPPORT: You are interrupting me. Stop.
MS. ANDREWS: I am here to tell you that I would like you not to interrupt my client.
MS. RAPPORT: No, you are not. You are here to make objections.
MS. ANDREWS: That's my objection. If you are interrupting my client, I am personally telling you that -- and please allow me to put it on the record. You are interrupting my client, and I think it is unfair, so I'm just asking you if you could just be

teachers came out in the hallway for like hallway supervision, and all I remember is saying, never mind. I am all set.
Q. How many times did you talk to Mr. Lee about this coverage problem to use the bathroom?
A. Many, many times.
Q. How many?
A. Every time a problem arose, every time DiRuzzo questioned me.
Q. Over a ten-year period, how many occasions?
A. Ten years? It is hard to think of ten years. I remember going to him about this problem at least 30 times, if you are going to say the years that I was there, especially over the last incident with DiRuzzo, the last big incident that I can remember which I believe I got the wrong date in my deposition but --
MS. RAPPORT: I am going to cut you off here, and ask another question because it is a little bit of a narrative at this point.
MS. ANDREWS: Same objection.
MS. RAPPORT: You are going to have to deal with it, Pat.
MS. ANDREWS: Would you please let me at least put what I need to put on the record. I afforded you that opportunity, please, okay.



MS. RAPPORT: Objection. Basis for your objection.
MS. ANDREWS: I am just saying, please stop interrupting her. It is unfair, and it is difficult for her to keep her train of thought. That happened in the first deposition, and it is very unfair to keep interrupting her in midstream. That is all I am saying. Try to accommodate her and let her finish.
MS. RAPPORT: I am going to put something on the record, your client has a tendency to engage in long narrative. I don't have any desire to question her for three days, but if I find that she has answered the question and I need to ask another, rather than let her go off on a tangent, in a direction that will be ...oductive to the questions I would like to have ...wered, because this is my deposition, I am going to, ...polite fashion, cut her off. That is my ...gative and my responsibility, particularly in ...of the fact that you have made it very clear ...tedly that you intend to hold me to a seven-hour ... given that your client tends to be discursive, ...s a pleasant feature, if we were sitting down ...coffee, but not productive to a deposition in ...Court, I am going to exercise my prerogative ...power and my responsibility to cut her off, and



if you engage in a discursive lament every time, it is only going to prolong it; are you quite finished with your objection?
MS. ANDREWS: Let me just say that I don't appreciate your telling my client during this deposition -- where she is, obviously, nervous -- that she is going on and on and giving her the impression that she is doing something wrong.
MS. RAPPORT: I don't care whether you appreciate it or not.
MS. ANDREWS: I would like --
MS. RAPPORT: We are going to take a five-minute break. You have five minutes to collect yourself, and we will go back on the record.
MS. ANDREWS: No --
MS. RAPPORT: If you want to put something on the record at that point, you may. Right now, we are going off the record. I am going to control the deposition. We are taking a five-minute break.
MS. ANDREWS: Fine. I will do it after. I don't mind --
MS. RAPPORT: You can put whatever you want on the record, but you are wasting time, and it will be noted. You may collect yourself, Ms. Tassone.



I certainly did not mean to insult you. I actually enjoy your company. I want you to have a break now so you can talk to your attorney, and then we will continue the questioning.
MS. ANDREWS: Let the record reflect that she didn't ask for the break, that Sara Rapport did.
MS. RAPPORT: Five minutes. You have until 10 after 12.
MS. ANDREWS: Now you are doing what Mr. DiRuzzo does.
MS. RAPPORT: If you need more time, Ms. Tassone, you can take as much time as you need to go to the bathroom, Ms. Tassone. Ms. Andrews needs to get back --
MS. ANDREWS: I didn't know that you could tell me what to do.
(BRIEF RECESS TAKEN)
MS. RAPPORT: Ms. Andrews, did you want to put something on the record?
MS. ANDREWS: I think my client does.
THE WITNESS: I would like to say that this isn't easy for me, and I don't mean to like go on and on. I really do not, and I get nervous, like when I got this thought in my head, and then -- I'm nervous now. If I do not get that thought out and you like ask

Word Index

me another question, I know what you mean that you do not want me to go on and on, but I get nervous, and I forget. I can't talk like as eloquently as you can and she can about this legal stuff, but part of me wishes I could say it without rambling to get my thought out, because I am trying to hold back feelings, and that's not easy, because these situations that I am talking about hurt me, hurt me hard, and in the process, I guess, maybe I am trying to hold back my feelings, and I am going on and on, and when I have to stop like that, I can't. I don't know what to do anymore. My heart is going (indicating), and I went to grab my water, and my hand is like shaking, and I want to do what is right, I want to answer your questions and make it right, and I just want to say whe something like this happens, when you stop me or change something, that I really get scared, and I don't know what to do.

MS. RAPPORT: I appreciate that comment, and let me say a couple of things that may comfort and may not comfort you about this process that your attorney may or may not have explained to you, but I think it is important for purposes of going forward. This is a deposition in which I am tying to learn as much as I can about your case for purposes of information that I need to get on behalf of my client,



which is essentially all of the children of Providence, that is who I essentially represent, as part of representing the school department, that's my job, and I have to get a sense of what your case is, and at the same time, I have to be sensitive to the fact that, as your attorney has pointed out, there are time constraints. There are time constraints for you to even sit here. It is difficult. There are time constraints for me, in that I have many cases and many other responsibilities, there are time constraints for your attorney, and more importantly as your attorney pointed out, the court may have a sense of what the constraints are with respect to how much time I may question you, and I am sensitive to that, so there may be occasions, while I am trying to coax out as much information as I can that I think it is pertinent to the issues that I think are important, I may need for you to be more responsive to the question, and that's a legal term that just means in very basic terms, just answer the question. You may be reminded of something else that your answer to me jogs in your own memory or you may have some other thought about it, and if there is something else you want to say about the question, you are free to tell me, as I have tried to make clear in putting your notes at the center and at the



beginning of this deposition. I encourage you to say I have something else, I also encourage you to write notes or take time to talk to your attorney, but there may be occasions in which given the conversational style that you have, that I need to move on to another area, and I don't, by that, mean to insult or suggest that you are not a smart person, or you are not listening, but that style of conversation is not going to work in this kind of setting, because we are not really sitting down and just chatting, so I understand what you are saying, and I am very sensitive to the fact that this is a painful discussion, and these are memories that are not pleasant, but that would be why I am interrupting you, not because there is anything wrong with the way you are answering, but given this context and this setting, we need to move on, and it is my opportunity to control this deposition.

THE WITNESS: Based on what you've said, you asked me five things, and then you stopped. You didn't want me to go into the fifth time, and like when I get interrupted like that, I get all --

MS. RAPPORT: Rest assured, Ms. Tassone, I have been trained to remember things that I may not write down, and the fifth time is high on my list of questions, and you will have ample opportunity to talk



about the fifth time, but while I am questioning you about 1, 2, 3 and 4, I may interject with another set of questions, and you certainly should feel free to write down, fifth time, and for some reason I don't remember to ask you, you can be quite confident that you will have an opportunity to put that on the record, and frankly, if there is something that I miss, your attorney's job is to ask you those questions, so it is actually not my responsibility to make sure you have said everything, it is your attorney's job.

MS. ANDREWS: That's why I am doing it.

MS. RAPPORT: So as far as the fifth time goes, please feel free to make a note of it, but I will need to, if you want to call it, interrupt, redirect your questioning or answers to areas that I need you to answer.

MS. ANDREWS: I want to put something on record. Thank you. I would like to say that again you are giving my client the distinct impression that she has to change the manner in which she answers these questions. She answers these questions, as you put it, in a conversational way, and you're suggesting that that is inappropriate here. My client can answer the questions in any way that she deems appropriate. If you choose to cut her off, so be it. You will cut her

Page 126

MS. ANDREWS: You just interrupted her again.
MS. RAPPORT: It is --
Q. Are you done?
MS. ANDREWS: No, she was in midstream. Can we go back and read back her answer and see where we left off?
MS. RAPPORT: No.
Q. I would like you to finish your thoughts, and if you --
MS. ANDREWS: You need --
MS. RAPPORT: You know what, Pat, you are not controlling the depo.
MS. ANDREWS: I am trying to be fair. I am quiet, until you interrupt, and again, it is the same thing. It is unfair to her, and she told you she loses her train of thought.
MS. RAPPORT: This has nothing to do with accommodations. This has nothing to do with accommodations. That is an absolute abuse of the term. I am not going to accommodate your discursive narrative in my deposition. That is not my job, and the record will reflect that you are smirking. Oil and water does not begin to describe the level of rancor that is developing here.
MS. ANDREWS: I want to say that in every

Page 127

single deposition, you have accused me of smirking, every single one, and that is a little ploy that you pull.
MS. RAPPORT: You just smirked.
MS. ANDREWS: That is your interpretation of what I did, and I disagree, and I have disagreed in every single deposition.
MS. RAPPORT: I am reflecting the animosity that's conveyed through your face. Now, do you want the question read back, or can you answer it?
THE WITNESS: I have no clue, to tell you the truth.
MS. ANDREWS? And her answer, if you will.
(LAST QUESTION AND ANSWER READ BACK)
MS. RAPPORT: You were not responsive. "It was like," that was a valid interjection.
MS. ANDREWS: I disagree.
Q. My question to you is, I am not asking whether you did in fact think of yourself as not having good classroom management skills, my question is whether you ever got the impression that Mr. DiRuzzo thought that you did not have good classroom management skills?
MS. ANDREWS: Objection as to form, asked and answered.

Page 128

MS. RAPPORT: You may answer.
A. He never outright told me personally that I did not have any good classroom management skills.
Q. Did he ever give you that impression?
A. Not in regard -- no. I never felt that was an issue with him. I never -- I just felt more that he was angry with me over other things than that.
Q. Like what?
A. Like I mentioned before, going to the bathroom, taking too long, botching his time with the fire alarm.
Q. Did he ever say to you, I find you irritating because you're always --
MS. RAPPORT: Is there something you wanted to say, Pat, or do you want to convey your facial expression again for the record; is that why you are touching your client?
MS. ANDREWS: Let me put on the record again that the reason that -- I am not anywhere close to touching my client, I am putting my hand out like this (indicating) because I explained to my client that I want her to wait until you finish your question, and I want to be able to put something on before, and so that's why I have my hand up, so that she'll know that she has to wait for you to finish in order for me to say something.

Page 129

MS. RAPPORT: Please read back the question.
(LAST QUESTION READ BACK)
Q. Because you're always leaving your classroom uncovered and because you are getting special treatment?
MS. ANDREWS: Objection as to form.
A. No, he did not use those words.
Q. Did he ever say to you that he found your limitations a problem?
MS. ANDREWS: Objection as to form.
A. No, he did not say he found my limitations a problem.
Q. Did he every make fun of them?
A. No.
Q. Did he ever say anything unkind about your physical limitations?
MS. ANDREWS: Objection.
A. No.
Q. Did he ever express hostility toward your physical limitations?
A. Well --
Q. Directly?
MS. ANDREWS: Objection as to form.
THE WITNESS: Can you explain that a little bit better?

Word Index

Page 174

Q. And did the other teachers respond in any way?
MS. ANDREWS: Objection as to form.
Q. Do you remember the other teachers responding in any way specifically?
MS. ANDREWS: You are talking about the ones at lunch?
MS. RAPPORT: Yes.
A. I don't remember their responding to it.
Q. Did you have any conversations with him outside of this lunchtime exchange about the coverage issue?
A. Except for that one time, no.
Q. Did you have any conversations with Jane Shagrue after this February 2003 incident about the coverage issue?
A. No, not that I can recall.
Q. Did you have any conversations with any teachers outside of the ones that we have already discussed about the coverage issue?
A. Yes.
Q. Who would that be?
A. I believe I spoke to Sharon Fuller about it. She was my friend, and Mrs. Johnson.
Q. When was that?
A. Well, Mrs. Johnson was not working there, but I still call her up on a regular basis. She is in North Carolina. She helped me out a lot, and I love her.

Page 175

And Sharon Fuller, I believe I spoke to her about it.
Q. So after this incident, you called Mrs. Johnson on the telephone?
A. Yes.
Q. What year did Mrs. Johnson retire, if you can remember?
A. She left in 1999, but then she came back and left again and then finally retired, I believe it was 2000/2001.
Q. But she was not there at the time of this incident?
A. No, see, Mrs. Johnson, like whenever I had any problems, like Mrs. Johnson like stayed in her room all the time. She was an older teacher. If I had any problems like with Mr. DiRuzzo or anybody and I was upset, I would go see her, and she would just always cheer me up and make me feel good. She was like a dear friend, a supporter. Like I said to myself --
MS. ANDREWS: There is no question pending. You are just rambling right now, that I am going to say, so I am going to interrupt you right now because I want you to conserve your energy.
A. She was a friend.
Q. I got Mrs. Johnson was a friend. Sharon Fuller, was she working at the time there in 2003?
A. I believe so.
Q. So you talked with her about this?

Page 176

A. Yes.
Q. More than once?
A. I don't remember how many times. I think I talked to her, at least, about once.
Q. What did she say?
A. Well, I also mentioned Mike Cote to her, and she said she could understand his viewpoint, too. That she felt bad for me because of what Jane had did and how hurt I felt, but she could also understand Mike's viewpoint, too, and the teachers' viewpoint about the coverage.
Q. Did you ever see the grievance itself that was filed?
A. No.
Q. Have you seen it in any context as part of this litigation?
A. I don't remember seeing it.
Q. Any other teachers whom you spoke with about the coverage issue, other than Mrs. Johnson, Sharon Fuller, Mike Cote, and the others who were at the lunch table?
A. I can't remember. I don't think so.
Q. And did you talk to Mr. Corcoran about it?
A. Oh, yes.
Q. Did you ever go to the union directly about it?
A. No.
Q. Did you ever talk to a special ed teacher about it?

Page 177

A. I might have, but I can't remember right now. I am trying to think. I was upstairs. I don't know if I spoke to -- it could not have been her, she was not there. I am trying to think of friends that I would have, that I could have confided in. I think I spoke to Mr. Perkins about it, too.
Q. And was that in or about 2003?
A. Yes.
Q. What did he say?
A. He said he would talk to Jane.
Q. He said he would talk to Jane?
A. Yes.
Q. And did you ever have a follow-up conversation to find out whether he did, in fact, talk to Jane?
A. Not that I know and remember.
Q. Any other comments by any teacher pertaining to your disability over the period of time that you worked there, other than the comments by Jane Shagrue and the ones by Mike Cote?
MS. ANDREWS: Objection as to form.
A. Well, when I first got there, a lot of teachers -- well, Fran Gonella approached me.
Q. Fran Gonella?
A. Yes.
Q. This would have been in 1992?

Page 186

time?
A. Yes, because they had to.
Q. And they would talk about the students with you?
A. Yes.
Q. But they would not be friendly to you?
A. Right, but then the following year, everything changed.
Q. Are we still talking about the same cohort, the special --
A. Yes, the special ed teachers.
Q. Year 3, 1995/1996, is it still Wilma, Elaine, the man and you, or was there a point at which the man went down and a new person came in?
A. I think that's the point the new person came in, and the new person talked to me.
Q. Who was the new person?
A. I can't think of her name, but I do believe she teaches in Providence. Turchetta, I think, is her last name.
Q. So the third year, Elaine left or went downstairs?
A. Right.
Q. And we are talking about 1995/1996?
A. And Murray retired.
Q. Murray is the man?
A. Murray is the man. I remembered his name, Murray.

Page 187

Q. And Murray retired by that third year?
A. Yes.
Q. And who replaced Murray?
A. I think, but I am not sure, because we had several teachers come and go, we had a Jennifer, and I can't remember her last name, and we had a Sloan White, and we had somebody by the name of Sam Pho.
Q. It would have been the one in charge of math; does that help refresh your memory?
A. Sloan White had math. Jennifer, it begins with a Q, her last name, but I can't remember her last name, so I am trying to remember the year that these three came. I am having a hard time remembering, but I remember them being part of the team. As a new teacher came on to the team, they would be okay with me.
Q. So the new folks coming in replacing Elaine or the man were friendlier?
A. Yes.
Q. And Wilma remained part of this cohort?
A. Right.
Q. And in the first two years, we are talking 1993/1994, 1994/1995, did any one of these teachers, other than Wilma Johnson, reporting to you say to you directly, I am angry that you came here and ousted this other teacher?

Page 188

MS. ANDREWS: Objection as to form.
A. I know, but I can't remember who, telling me that they were angry because I ousted this other teacher, because she was a very nice teacher, and she had been teaching there for many years, but I don't know if it was Elaine or Fran.
Q. Did any of these teachers, other than saying that, say anything else to you that was hurtful or inappropriate?
MS. ANDREWS: During that period 1993 through 1996?
MS. RAPPORT: Yes.
A. It was hurtful and made me feel bad is that they would not -- they just totally ignored me, avoided me, like I was the plague. I felt awful. All I remember is feeling awful and not knowing what to do about it, but something happened, and they changed.
Q. What happened?
A. My daughter was killed in a car accident.
Q. What year was that?
A. 1996/1997 school year.
Q. That would have been your fourth year at school?
A. Yes, and for some reason all three of them, to my immense surprise, changed and came to my assistance.
Q. All three?
A. Elaine Starks, Fran Gonella, and Jack Biancusso,

Page 189

and they just changed completely, they came to me and offered their condolences, and they became very helpful, because I went back to work a couple of weeks after she died, and they said to me, if you cannot teach, put your kids in our class, we will give you all the time. They were just like night and day after she died.
Q. When did your daughter get killed?
A. June 2, 1997.
Q. And what else did they do for you, other than that?
A. They helped, they started a fund, especially Jack, to collect monies to help for my daughter's funeral.
Q. How much did that raise?
A. That raised close to $2,000. About 1,700.
Q. Anything else?
A. They started giving me books and supplies and just being very friendly. It was like, you know, it was like a night-and-day change. It felt so good. I was so happy. But too bad it had to take my daughter's death for them to be nice to me.
(BRIEF RECESS TAKEN)
MS. ANDREWS: For the record, she is prepared to go on beyond 4:30, and so am I.
THE WITNESS: Any time you want me to go to.



Word Index

MS. RAPPORT: That's fine, but at 5, I have an appointment to tend to. I have a religious instruction for my child, so we will go for another 20 minutes, and then I will be seeking to reconvene.

THE WITNESS: I was going to say something to finish what I said earlier.

MS. ANDREWS: Okay.

A. That although these three teachers did a complete turnaround, still I felt a lot of -- not like the other teachers, Jane Shagrue and the others, they just never became friendly.

Q. Never to you?

A. Yes.

Q. Did you have a group of friends at this point that you could point to?

MS. ANDREWS: You are talking 1997?

A. Well, there was Jim.

Q. Let's go back a little bit, when you say the new teachers came in in 1995, 1994/1995, was that when the new teachers came in?

A. Well, one new teacher, I think, yes, two new teachers, they talked to me, and we worked together, but we did not have lunch together, and I did not meet with them about anything else, but the kids' stuff. They were younger, and they wanted to be with younger



teachers.

Q. Who did you eat lunch with in 1994/1995?

A. 1994/1995, I usually ate alone in a classroom or in with Mrs. Johnson's room.

Q. How about 1993/1994, who did you eat with?

A. I ate alone with in my classroom.

Q. Not with Mrs. Johnson?

A. No.

Q. How about 1995/1996?

A. I still believe I ate alone.

Q. In your classroom?

A. Yes, or with Mrs. Johnson.

Q. So could you go to the lunchroom, if you wanted to?

A. No.

Q. Why not?

A. Well --

Q. The teachers' lunchroom, I mean.

A. Because I can't get to the lunchroom during lunchtime. The kids are in the cafeteria, and it is too crowded. I can't scoot by.

Q. Where do most of the teachers eat, is there a teachers' lunchroom?

A. There is a teachers' room that most of the teachers go to, which is off of the lunchroom, so in the beginning, I could not go there when I was on the



second floor anyway until I got my remote because I couldn't got downstairs without Mrs. Johnson's help or somebody else's help, and she never left her room, and I did not want to bother the teachers any more than what I had already had, I felt they didn't -- they did not bother me, so even now I still can't get to the teachers' room during lunch because it is a logistic, you have to through the cafeteria to get to the teachers' room.

Q. Do other teachers eat in their room, besides you?

MS. ANDREWS: Objection as to form and foundation.

A. Yes.

Q. In 1994/1995, did other teachers eat in their room?

A. I don't know that far back. I know they do now.

Q. What about in 1996/1997, did you eat by yourself that year, or was that when the Winn lunch started?

A. I don't know if that was when the Winn lunches.

Q. That's Jim Winn?

A. Yes.

Q. So you think that the lunches with Mr. Winn might have begun in 1998 after your daughter died, 1998/1999 or before your daughter died?

A. Let me see. Let me think. It could have been about that time, if it was, it could have been the year



before she died or the year after she died, but it was around that time that I started to have lunch outside of my room.

Q. So it could have been 1996/1997 or 1997/1998?

A. Yes.

Q. Was there anyone else, other than Mr. Winn, that you would eat lunch with?

A. Sharon Fuller.

Q. Did there come a point when it was more than Sharon, Mr. Winn, and you?

A. Mr. Morris would join us.

Q. Was that at the beginning of --

A. Yes, we were kind of like the four, if Sharon got the same free lunches. See, with Mr. Winn, it didn't make any difference, he was a librarian, and he could eat at any lunch. Mr. Morris was the technology person in the building, and it did not make any difference to him. On some years, I remember one year where Sharon Fuller did not get the same lunch as we did, but worked something out with another teacher so she could eat with us at least two days a week where she switched her lunchtime with him, because she as an elective teacher and would have cafeteria duty during the lunch period.

Q. What was Ms. Fuller's elective?

A. Computer business or business/computer because in



Word Index

# EXHIBIT 4

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| **SIMONNE T. TASSONE, Plaintiff** | : | |
| | : | |
| **v.** | : | **C.A. NO. 03-481ML** |
| | : | |
| **PROVIDENCE SCHOOL BOARD** | : | |
| **AND THE CITY OF PROVIDENCE,** | : | |
| **Defendants** | : | |

# NOTICE TO TAKE DEPOSITION

DEPONENT: Simonne T. Tassone

DATE & TIME OF TAKING: **Wednesday, August 31, 2005 at 10:00 a.m.**
**Wednesday, September 21, 2005 at 10:00 a.m.**
**Thursday, September 22, 2005 at 10:00 a.m.**

To: Patricia E. Andrews, Esq.
Carly Beauvais Iafrate, Esq.
170 Westminster Street
Providence, RI 02903

Allied Court Reporters
115 Phenix Avenue
Cranston, RI 02920

Please take notice that, pursuant to the provisions of the Federal Rules of Civil Procedure, Defendants will take testimony on oral examination of the above-named deponent, at the dates and times herein above referred to, before a Notary Public of the State of Rhode Island or some other duly qualified person and thereafter from day to day as the taking of the deposition may be adjourned, at the office of the **Department of Law, City of Providence, 275 Westminster Street, Suite 200, Providence, Rhode Island.**

You are invited to attend to cross-examine.

DEFENDANTS,
PROVIDENCE SCHOOL BOARD &
CITY OF PROVIDENCE

By its Attorneys:

JOSEPH M. FERNANDEZ
CITY SOLICITOR

SARA A. RAPPORT (# 6184)
Senior Assistant City Solicitor
Department of Law
275 Westminster Street, Suite 200
Providence, RI 02903
(401) 421-7740 Ext. 333
(401) 351-7596 (Fax)

**CERTIFICATION**

I hereby certify that on this 23rd day of August, 2005, I caused a true copy of the foregoing to be served on the above-listed parties by ☐ mailing a copy of same, ☐ faxing a copy of same, ☐ hand-delivering a copy of same.

**From:** Pat Andrews [mailto:peandrews@verizon.net]
**Sent:** Friday, September 09, 2005 9:33 AM
**To:** Sara Rapport
**Subject:** RE:

Sarah:

Unfortnately, I have settlement conferences on both of those days. Perhaps, I did not make that clear enough in my e-mail.

P

---

**From:** Sara Rapport [mailto:Srapport@providenceri.com]
**Sent:** Thursday, September 08, 2005 4:19 PM
**To:** Pat Andrews
**Subject:** RE:

Hi Pat – Were both of the days not good? I had suggested September 21 and 22. Perhaps the 22nd would work? Thank you. Sara

---

**From:** Pat Andrews [mailto:peandrews@verizon.net]
**Sent:** Thursday, September 08, 2005 3:17 PM
**To:** Sara Rapport
**Subject:**

Sara:

In getting unburied, I have just discovered that I have two settlement conferences in federal court court. The first one is Petrarca v. Southern Union (04-310S) and it is for 2:00; the other one is Horne v. Southern Union (04-434S) and it is also for 2:00. This is a problem because you have scheduled depositions for Simmone for that day. (Of course, I am still not agreeing to either of those two days; I am in the process of deciding what I am going to do about this although I am willing to give you some extra time as I promised.) Can you give me other dates? Please give me enough proposed dates because I am incredibily busy with many other things and this will obviate the need for us to keep going back and forth. I would appreciate your addressing this asap because Simmone is putting in for these days off.

Sorry for the inconvenience but I don't know what else we can do.

Pat

**Sara Rapport**

**From:** Sara Rapport
**Sent:** Thursday, September 22, 2005 4:43 PM
**To:** 'Pat Andrews'
**Subject:** RE:

That's what I meant Pat when I said "if necessary". I would not file Motion unless I needed to. But given that, why would you give me the heads up, unless necessary? Don't you think I would try to finish in one day?

---

**From:** Pat Andrews [mailto:peandrews@verizon.net]
**Sent:** Thursday, September 22, 2005 4:41 PM
**To:** Sara Rapport
**Subject:** RE:

Sara, thanks for the heads up. I believe the better way to do it is to wait to see if you finish. That is my suggestion now and that will be part of what I will be arguing to the court if you file a motion prematurely. It seems moot at this point especially given your prior representations that you might be able to finish in a day if you get discovery from me.

---

**From:** Sara Rapport [mailto:Srapport@providenceri.com]
**Sent:** Thursday, September 22, 2005 4:20 PM
**To:** Pat Andrews
**Subject:** RE:

Thanks for the heads up, Pat. I will file motion with Court as necessary.

---

**From:** Pat Andrews [mailto:peandrews@verizon.net]
**Sent:** Thursday, September 22, 2005 4:00 PM
**To:** Sara Rapport
**Subject:**

Sara:

I have decided to make my client available for one more day. You should be able to finish by that time.

Pat Andrews

# EXHIBIT 5

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| **SIMONNE T. TASSONE, Plaintiff** | : | |
| | : | |
| **VS.** | : | **C.A. NO. 03-481ML** |
| | : | |
| **PROVIDENCE SCHOOL COMMITTEE** | : | |
| **AND THE CITY OF PROVIDENCE,** | : | |
| **by and through its Finance Director,** | : | |
| **Alex Prignano, Defendants** | : | |

## NOTICE TO TAKE DEPOSITION

DEPONENT: Simonne T. Tassone

DATE & TIME OF TAKING: Friday **October 14, 2005 at 10:00 a.m.** and to Continue on **Tuesday October 18, 2005 at 10:00 am**.

To: Patricia E. Andrews, Esq.
Carly Beauvais Iafrate, Esq.
170 Westminster Street
Providence, RI 02903

Allied Court Reporters
115 Phenix Avenue
Cranston, RI 02920

Please take notice that, pursuant to the provisions of the Federal Rules of Civil Procedure, Defendants will take testimony on oral examination of the above-named deponent, at the date and time herein above referred to, before a Notary Public of the State of Rhode Island or some other duly qualified person and thereafter from day to day as the taking of the deposition may be adjourned, at the office of the **Department of Law, City of Providence, 275 Westminster Street, Suite 200, Providence, Rhode Island.**

You are invited to attend to cross-examine.

DEFENDANTS,
PROVIDENCE SCHOOL BOARD &
CITY OF PROVIDENCE

By its Attorneys:

JOSEPH M. FERNANDEZ
CITY SOLICITOR

SARA A. RAPPORT (#5251)
Senior Assistant City Solicitor
Department of Law
275 Westminster Street, Suite 200
Providence, RI 02903
(401) 421-7740 Ext. 333
(401) 351-7596 (Fax)

**CERTIFICATION**

I hereby certify that on this 15th day of September, 2005, I caused a true copy of the foregoing to be served on the above-listed parties by ☑ mailing a copy of same, ☐ faxing a copy of same, ☐ hand-delivering a copy of same.

**Sara Rapport**

**From:** Sara Rapport
**Sent:** Monday, October 03, 2005 12:17 PM
**To:** 'Pat Andrews'
**Subject:** RE: Depositions - Tassone Matter

Don Zimmerman is not available October 17-21.

---

**From:** Pat Andrews [mailto:peandrews@verizon.net]
**Sent:** Monday, October 03, 2005 12:13 PM
**To:** Sara Rapport
**Subject:** RE: Depositions - Tassone Matter

Sarah:

Simone is going to the doctor today. She said she will get the results of the MRI. I told her to make sure she finds out to what extent she will be out of work and out of commission. I will let you know by tomorrow if not this evening. I specifically told her to find out if she will be able to do the deposition a week from Friday. She is on heavy medication.

I am available on October 17, 21, 24 and 27. Please let me know which previously designated deponents are available when.

Pat

---

**From:** Sara Rapport [mailto:Srapport@providenceri.com]
**Sent:** Monday, October 03, 2005 11:21 AM
**To:** Pat Andrews
**Cc:** ciafratelaw@cox.net
**Subject:** Depositions - Tassone Matter

Pat:

I was unaware that Simmone fell at work. Please advise of date by which the discovery will be complete, taking into consideration this unfortunate complication.

The dates that I am available for deposition, this month, are: October 17, October 21, October 24, and October 26-28.

Please indicate which dates you seek to use asap. If I don't hear from you by the end of the day on Wednesday, October 5, I will begin to calendar appointments and events on those dates. Know that I am out of the office tomorrow and Wednesday for the Jewish New Year.

Please convey my regrets to Ms. Tassone on her fall and wish her on my behalf a speedy recovery.

Sara Rapport

---

**From:** Pat Andrews [mailto:peandrews@verizon.net]
**Sent:** Monday, October 03, 2005 9:38 AM
**To:** Sara Rapport

**Subject:**

Sara:

I am writing for two reasons. First, as you may know, Simone fell at work. I believe there had been a plumbing problem which had not been fixed and the water was on the floor. Unfortunately, as of last week, she was in a lot of pain and obviously out of work. Given this, I have not been able to get her input on the discovery responses. I will try to get them to you by the end of the week. I will let you know how things are by mid-week. As of right now, we still intend to go forward with her deposition next week. I will be checking with Simone on her condition and the medication she is taking and how this will impact things.

Second, I e-mailed you for dates on the depositions which I have told you I need to finish. If I do not hear from you, I will simply issue notices.

Pat

# EXHIBIT 6

JOSEPH M. FERNANDEZ
City Solicitor

DAVID N. CICILLINE
Mayor

# Department of Law

19 September 2005

Patricia Andrews, Esq.
Carly Beauvais Iafrate, Esq.
Law Offices of Patricia E. Andrews
170 Westminster St., Suite 601
Providence, Rhode Island 02903
*Via Facsimile (351-4802) and First-Class Mail*

Re: Simonne Tassone

Dear Pat and Carly:

I am writing to ask you to identify the date upon which you will produce the responses to the discovery sent to you on 9 August 2005. I asked you the same question via electronic mail. You may have answered "by the closure date" but upon reflection it is not clear to me that you meant that you would be sending additional "written discovery" for defendants to answer, or whether, in contrast, you would be answering and responding to the discovery delivered to you by "the closure date."

Since the "closure date" for discovery has now passed, I reiterate the question, and ask that you give me a firm date by no later than the close of business on Wednesday, September 21, 2005. If I do not receive a response by then, I will file a Motion to Compel.

Thank you for your attention to this matter.

Sincerely yours,

Sara A. Rapport
Senior Assistant City Solicitor
Chief Legal Counsel, PSD

275 Westminster Street, Suite 200 • Providence, Rhode Island 02903-1845
(401) 421-7740 (Voice) • (401) 751-0203 (TDD) • (401) 351-7596 (Facsimile)

## Sara Rapport

**From:** Pat Andrews [peandrews@verizon.net]

**Sent:** Thursday, September 22, 2005 12:11 PM

**To:** Sara Rapport

Sara:

I am writing for several reasons. First, we need more time to answer the discovery although you will have it well before her deposition. Second, you promised to produce the items ordered by the court order. We have yet to receive your responses. As you know, the court entered an order some time ago. Third, please give me dates you are not available to finish: Zimmerman, Gonzalez, DiRuzzo and Lee. Fourth, please let me know if you are going to ask questions of Zimmerman, Gonzalez, DiRuzzo and Lee after I finish so that I can plan my schedule accordingly. Fifth, for those for whom you have begun cross, what are your intentions so I can plan accordingly. Sixth, I believe discovery closes the end of September. You have indicated it has closed; yet, in one of your last e-mails, you asked me what date it closes implying you did not know yourself. I intend to send some written discovery by the end of September. Seventh, with respect to Winn, you indicated that you were not going to question him further and suggested that I was the reason you could not finish. I have not looked at the transcript but do recall that Mr. Winn was extremely tired. I assume that you will not be contacting him as an "employee" to ask him questions outside the context of the deposition. If that is your intention, I request that you re-convene the deposition; otherwise, I will move to exclude his testimony at trial.

I will wait to hear from you on these matters.

Pat Andrews

JOSEPH M. FERNANDEZ
City Solicitor

DAVID N. CICILLINE
Mayor

## Department of Law

22 September 2005

Patricia Andrews, Esq.
Law Offices of Patricia E. Andrews
170 Westminster St., Suite 601
Providence, Rhode Island 02903

*Via Facsimile (351-4802) and First-Class Mail*

Re: Simonne Tassone

Dear Pat:

I am in receipt of your e-mail of today. Here are my responses.

(1) By what date will you produce the responses to Defendants' discovery served on you on 9 August 2005? Please provide date certain.
(2) The deposition of Robert Lee was not suspended but had concluded.
(3) The depositions of Messrs. Zimmerman, Gonzalez, and DiRuzzo are suspended and you have a limited amount of time remaining to conclude your questioning. I will not advise you in advance of my plans for any questioning I intend. I am not available any day next week except for September 29. Are you seeking dates beyond September?
(4) Discovery closed on 1 September 2005.
(5) Your comments about Mr. Winn require no response at this point.

I trust this clarifies the Department's position.

Sincerely yours,

Sara A. Rapport
Legal Counsel, PSD

cc: Mr. Don Zimmerman, Senior Executive Director, HR, PSD
Mr. Jose Gonzalez, PSD