UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| SIMONNE T. TASSONE, Plaintiff | : |
| | : |
| v. | : C.A. NO. 03-481 ML |
| | : |
| PROVIDENCE SCHOOL BOARD | : |
| AND THE CITY OF PROVIDENCE, | : |
| Stephen Napolitano, Defendants | : |

**AFFIDAVIT ROBERT E. LEE**

1. I, Robert E. Lee, was the Principal of Bridgham Middle School from September 1993, until December 2001, when I retired from employment with the Providence School Department.

2. Beginning with the 1994-1995 school year, I oversaw the implementation of two changes in the educational program for special education students at Bridgham.

3. First, I initiated "team teaching" for all students at the school, including special education students, whereby they would change classes, and teachers, instead of remaining in the same setting with one instructor for the entire day.

4. I created five teams of "regular" education students – one sixth grade team, two seventh grade teams, and two eighth grade teams – and one team of special education students, all with what is now characterized as "mild-to-moderate" ("mild-moderate") learning disabilities.

5. The teaming changes necessitated that I move a number of teachers from the classrooms that they had occupied in the 1993-1994 school year (my first year in the building).

6. Simonne Tassone was a member of the team of four teachers whose students had mild-moderate learning disabilities. She was moved from the classroom on the first floor, where she had been located during her first year at the school (1993-

1994), to a second floor classroom. I believe that another member of the special education team also was moved from the first to the second floor, and that the other two team members were already in classrooms on the second floor.

7. In addition to implementing "team teaching," I located each of the four "mild-moderate" classrooms in each of the four corners of the second floor, in close proximity to a cluster of classes comprised of students without special needs. The plan was to begin to effect "mainstreaming," or the integration of students with different learning capabilities into classes comprised of those characterized as "regular" education students. The overall goal, as the above labeling suggests, was to reduce the stigma created by such separation and categorization.

8. Although some mainstreaming or integration did take place that year, the movement of "mild-moderate" students into classes comprised of non-special education students was sporadic and not embraced by the faculty in significant numbers, or with sufficient frequency, or to effect the change intended.

9. The team teaching, however, was successful. Mild-moderate students moved throughout the day and on the same floor from one academic class to another. Positioning them on the same floor was important, in that it fostered a sense of community within their cohort and between themselves and "regular" education students whom they would see in the halls and in classrooms nearby.

10. No students with mild-moderate learning disabilities remained on the first floor in and after September 1994.

11. I intentionally reserved the classrooms on the first floor for students with special needs who had severe learning disabilities, physical limitations, or behavioral and emotional difficulties. For those with behavioral difficulties, the proximity to the main office was critical. For others with physical limitations, proximity to the nurse's office was important (to service such needs as diapering, feeding,

cleaning, etc.).

12. Ms. Tassone did not prefer to teach, and in my opinion was not well suited to handling, children with these more significant challenges.

Dated: 7/27/06

Robert E. Lee

Robert E. Lee

Notary: Carolyn M. Lanpacci
Notary Public